DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**EMRO J. STASO, JR.,**

                       **Plaintiff,**                       **Civil Action**

**v.**                                                **No. 06-2236-DJW**

**UNITED STATES OF AMERICA,**

                       **Defendant.**

## MEMORANDUM AND ORDER

Pending before the Court are the Motions for Summary Judgment filed by Plaintiff (doc. 13) and Defendant United States of America ("United States") (doc. 16). Plaintiff brings this action pursuant to 26 U.S.C. § 6330, seeking judicial review of the "Determination Concerning Collection Actions(s) under Section 6320 and/or 6330" issued by the Internal Revenue Service ("IRS") on May 10, 2006 ("Determination").[1] For the reasons set forth below, the Court will affirm the IRS' Determination.

### I.    Nature of the Matter Before the Court and Background Information

Plaintiff seeks review of the IRS' decision that, as of March 3, 2004, when the IRS received Plaintiff's request for Collection Due Process Hearing ("CDP Hearing"), the collection statute of limitations had not expired with respect to four separate trust fund recovery penalties assessed against him. More specifically, Plaintiff argues that the collection statutes of limitations on all penalties ran as of December 31, 2002. Alternatively, he argues that the collection statutes of limitation on all penalties ran on July 1, 2003. Thus, he asserts that at the time the IRS received his

_____

[1]*See* Notice of Determination, attached as Ex. A. to Pl.s' Compl. (doc. 1).

request for a CDP Hearing on March 3, 2004, the collection statutes of limitations had run and the IRS is barred from collecting on the penalties.

The dispute in this case relates to the effect Plaintiff's four bankruptcies and three Offers in Compromise ("OIC") have on extending the collection statutes of limitations as to the four trust fund recovery penalties.[2]  Various amendments in the tax laws took place while Plaintiff's OICs were pending, and the parties disagree as to how those amendments, along with Plaintiff's bankruptcies, should  affect the collection statute of limitations.

Plaintiff asks the Court to rule that the IRS abused its discretion in applying the statutory amendments and bankruptcy suspension statute to determine that the statutes of limitations had not run on any of the four trust fund recovery penalties.  He asks the Court to overturn the IRS' May 10, 2006 Determination and enter judgment in his favor, holding that the periods for collecting the penalties had expired.  The United States, on the other hand, contends that the IRS correctly applied the statutory scheme and did not abuse its discretion in determining that the statutes of limitation had not expired.  The United States asks the Court to affirm the May 10, 2006 Determination and to enter judgment in its favor.

## II.    Framework for Deciding the Case

Before analyzing the merits of this case, the Court must consider the proper framework for reviewing the IRS' Determination.  The parties have each filed a pleading styled "Motion for Summary Judgment."  It is clear from the Tenth Circuit's decision in *Olenhouse v. Commodity*

---

[2]Trust fund recovery penalties are assessed pursuant to I.R.C. § 6672 (26 U.S.C. § 6672) against any person who is responsible for collecting or paying withheld income and employment taxes, or for paying collected excise taxes, where the person willfully fails to collect or pay them.

*Credit Corporation,*[3] however, that the use of summary judgment is prohibited in administrative appeals such as this case.  The Tenth Circuit reasoned in *Olenhouse* that the summary judgment procedure improperly allows the moving party (usually the defendant/appellee) to define the issues on appeal and erroneously invites the court to rely on evidence outside the administrative record.[4] It may also lead the court to misapply the standard of review.[5]  Accordingly, the Tenth Circuit in *Olenhouse* held that "[r]eviews of agency actions in the district court must be processed *as appeals.*"[6]

---

[3]42 F.3d 1560 (10th Cir. 1994).

[4]*Id.* at 1579-80.

[5]*Id.*

[6]*Id.* at 1580 (emphasis added).  As the court in *Lodge Tower Condominium Ass'n v. Lodge Properties, Inc.*, 880 F.Supp. 1370 (D. Colo.1995), *aff'd,* 85 F.3d 476 (10th Cir. 1996) pointed out, a motion for summary judgment "makes no procedural sense when a district court is asked to undertake judicial review of agency action."  *Id*. at 374.  Motions for summary judgment are designed to isolate factual issues on which there is no genuine dispute so that the court can determine what part of the case must tried.  Agency action, however is reviewed, not tried.  *Id*. When the court reviews agency action, the issue is not whether the material facts are disputed, but whether the agency properly dealt with the facts before it.  *Id*.

The District of Kansas subsequently amended its Rules of Practice and Procedure, specifically D. Kan. Rule 83.7, to conform with the requirements of *Olenhouse.*[7] Thus, this Court may not entertain the parties' motions for summary judgment.[8]

Notwithstanding the above, the Court will not require the parties to re-brief the issues. The Court will instead treat Plaintiff's Motion for Summary Judgment (doc. 13), Suggestions in Support (doc. 14), and Response to United States' Motion for Summary Judgment (doc. 18) as argument in support of its appeal and its position that the IRS' determination should be set aside. Similarly, the Court will treat the United States' Motion for Summary Judgment (doc. 15), Memorandum in Support (doc. 16), and Response to Plaintiff's Motion for Summary Judgment (doc. 17) as argument in support of its position that the IRS' determination should be affirmed.[9]

---

[7]*Persinger v. Barnhart*, No. CIV. A. 05-2366-CM, 2006 WL 4046014, at *2 (D. Kan. Aug. 22, 2006). D. Kan. Rule 83.7 (2006) is available online at http://www.ksd.uscourts.gov/rules/localrules. Rule 83.7(d) provides as follows: "The party seeking review shall serve and file a brief conforming to the requirements of D. Kan. Rule 7.6 within forty-five (45) days after the date on which the record is filed. The responding party shall serve and file a brief within thirty (30) days after service of the brief of the party seeking review. The party seeking review may serve and file a reply brief within fourteen (14) days after service of the brief of the respondent . . . . The case shall be submitted when all briefs have been filed."

[8]*See Persinger,* 2006 WL 4046014, at *2 (relying on *Olenhouse* and D. Kan. Rule 83.7 in declining to entertain plaintiff's motion for summary judgment in a case where plaintiff sought review of the Social Security Commissioner's decision).

[9]*See SFG LP v. Comm'r,* No. CIV 05-0486 WPL/WDS, 2006 WL 2418865, at *2 (D. N. M. July 18, 2006) (not requiring re-briefing and instead treating the IRS' motion for summary judgment as argument in support of its position that the IRS' determination should be upheld); *Lodge Tower,* 880 F.Supp. at 1375 (D. Colo. 1995) (not requiring re-briefing and construing plaintiff's complaint and motion for partial summary judgment as argument in support of its position that the agency action should be set aside; and treating defendants' motions to dismiss and for summary judgment as argument in support of their position to affirm agency's action), *aff'd,* 85 F.3d 476 (10th Cir. 1996); *see also MRCA Info. Servs. v. U. S.,* 145 F.Supp.2d 194, 195 & n. 3 (D. Conn. 2000) (taking a similar approach in a 26 U.S.C. § 6330(d) appeal and treating the United States' motion for summary judgment as seeking affirmance of IRS' determination).

The parties have been given ample opportunity to advance all legal and factual arguments in support of their respective positions. Requiring the parties to invest the time and expense to file new briefs, which would essentially advance the same legal and factual points, but without the summary judgment framework, would serve no purpose.[10] As the Court will apply the legal standards applicable to appeals under 26 U.S.C. § 6330(d)(1), rather than the legal standards applicable to summary judgment motions,[11] the Court does not believe that either party will be prejudiced by proceeding in this manner.

## III.   The Record on Review

It is well settled that the Court's review of the IRS' determination must be based only on the agency record.[12] D. Kan. Rule 83.7 requires the agency to file the "record on review," which should include the order upon which review is sought and any findings or report on which it is based, along with the pleadings and proceedings before the agency.[13] The record on review is to be filed when

---

[10] *See Logan Farms, Inc. v. Espy*, 886 F.Supp. 781, 785-56 (D. Kan. 1995) (in action seeking review of agency action, re-briefing was not required because each of the parties was given ample opportunity to make arguments in the summary judgment briefing and because the court would base its decision on the proper legal standards and the administrative record).

[11] *See SFG*, 2006 WL 2418865, at *2 (applying abuse of discretion standard rather than summary judgment standards to appeal of IRS determination brought pursuant to 26 U.S.C. § 6330(d)(1) despite fact that parties filed motions for summary judgment); *see also Baca v. King*, 92 F.3d 1031, 1034 n. 1 (10th Cir. 1996) (affirming district court's judgment in administrative appeal where "[d]espite its poor choice of [summary judgment] nomenclature," district court applied proper abuse of discretion standard rather than summary judgment standard).

[12] *See Olenhouse*, 42 F.3d at 1579-80 (court reviewing agency decision must rely only on evidence contained within the administrative record).

[13] D. Kan. Rule 83.7(b) & (c).

the agency files its answer, unless a different time is provided the statute authorizing review.[14]  In addition, Rule 83.7(d) requires that the Court's decision be "rendered upon the briefs, and the record."[15]

Here, the United States did not file the record when it filed its answer, nor did it file it at any other time.  Plaintiff did, however, file with its Complaint the IRS Appeals Officer's Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330 dated May 10, 2006 ("Notice of Determination") and attachments thereto.[16]  The United States admitted in its Answer that a copy of the Notice of Determination was attached to Plaintiff's Complaint.[17]  Furthermore, in the Pretrial Order, the parties stipulated to various facts that are set forth in the Notice of Determination and its attachments.

In light of the above, the Court rules that the record in this case consists of the Notice of Determination and its attachments.  Furthermore, the Court finds that the following are the relevant facts in the record:

1.      The IRS assessed trust fund recovery penalties against Plaintiff under I.R.C. § 6672 for the quarterly periods ended December 31, 1986; March 31, 1987; June 30, 1988; and September 30, 1989. [18]

---

[14]*Id.*, 83.7(c).

[15]*Id.*, 83.7(d).

[16]The Notice of Determination and its attachments are contained in Exhibit A to Plaintiff's Complaint (doc. 1).

[17]*See* Answer (doc. 4), ¶2.

[18]Notice of Determination at p.1; Attachment to Notice of Determination at p.1.

2.      The penalties were assessed for the four quarterly periods on September 26, 1988; December 7, 1987; April 3, 1989; and February 4, 1991, respectively.[19]

3.      Plaintiff filed a bankruptcy case on August 16, 1990, and received a discharge on December 20, 1990.[20]

4.      Plaintiff filed a bankruptcy case on June 3, 1994, and received a discharge on October 18, 1994.[21]

5.      Plaintiff filed a bankruptcy case on November 4, 1994, and received a discharge on February 20, 1996.[22]

6.      Plaintiff filed a bankruptcy case on August 27, 1996, and received a discharge on February 24, 1997.[23]

7.      Plaintiff submitted three Offers in Compromise ("OIC") to the IRS.   The first OIC was accepted for processing on September 4, 1996 and rejected on December 12, 1997.[24]

8.      Plaintiff's second OIC was accepted for processing on November 12, 1999 and rejected on June 1, 2001.[25]

---

[19]Notice of Determination at p.2.

[20]Attachment to Notice of Determination at p.3.

[21]*Id.* at p.4.

[22]*Id.*

[23]*Id.*

[24]*Id.*

[25]*Id.*

9.      Plaintiff's third OIC was accepted for processing on December 11, 2001 and returned to Plaintiff on September 6, 2002.[26]

10.     The Revenue Officer issued the Final Notice of Intent to Levy for the trust fund recovery penalties at issue on February 4, 2004.[27]

11.     Plaintiff responded by submitting a request for a CDP Hearing ("CDP Hearing Request"), which the IRS received on March 3, 2004.[28]

12.     In his CDP Hearing Request, Plaintiff did not contest the existence or amount of the liability arising form the four trust fund recovery penalty assessments.  He did, however, object to attempts to collect the four trust fund recovery penalties on the basis that the collection statute of limitations for each penalty had expired.[29]

14.     A CDP Hearing was held by telephone on January 7, 2006.[30]

15.     The IRS issued a Notice of Determination to Plaintiff on May 10, 2006.[31]  The Notice of Determination indicated that the collections statutes for the four trust fund recovery penalties had not expired and that the IRS' proposed levy was an appropriate action.[32]

16.     The Notice of Determination indicated that the following rules were used the compute the Collection Statute Expiration Dates ("CSEDs") for the periods at issue:

---

[26]*Id.*

[27]*Id.* at p.2

[28]*Id.*

[29]*See generally* Notice of Determination and Attachments.

[30]Attachment to Notice of Determination at p.2.

[31]Notice of Determination at p.1.

[32]*Id.* at p.2; Attachment to Notice of Determination at p.1, 5-6.

a.  If the offer pending date is prior to 1/01/2000 and rejected prior to 01/01/2000 the CSED is extended from the pending date (TC 480) until the rejection date (TC 481) plus 1 year.  This extension cannot extend the CSED beyond 12/31/2002.  If the original CSED is beyond 12/31/2002 then it remains the CSED of record.

b.  If the offer pending date is prior to 1/01/2000 and rejected 01/01/2000 or later the CSED is extended from the pending date (TC 480) until 12/31/1999 plus 1 year.  **This extension (the period from the pending date until 12/31/1999 cannot extend the CSED beyond 12/31/2002.  In addition, the CSED is extended by law from 01/01/2000 until 12/20/2000 or the rejection date (TC 481) whichever is earlier, and from 03/09/2002 until the rejection date (TC 481) plus 30 calendar days.  These last two extension periods are not limited to 12/31/2002 or the original CSED.**

c.  The date the offer is pending is the date the waiver is signed (TC 480 date), not the date of the letter is mailed advising that the offer is processable.

d.  If the offer has a pending date of 01/01/2000 or later and the taxpayer does not appeal, the CSED is extended from the pending date (TC 480) until 30 calendar days after rejection letter is issued (TC 481) excluding any portion of that period which falls between 12/20/2000 and 03/09/2002.  If the offer is returned without appeal rights, the additional 30 days is not added.[33]

17.  Attached to the Notice of Determination were the Appeals Officer's detailed charts showing how the CSED's were calculated for each trust fund recovery penalty.[34]

## IV.  Background Information Regarding Collection Due Process Hearings and Notices of Determination

The IRS "is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed" by the Internal Revenue Code ("the Code").[35]  The Code directs the IRS to "collect the

---

[33]Attachment to Notice of Determination at p.5 (emphasis in original).

[34]*See* Attachments No. 1-4 to Notice of Determination.

[35]26 U.S.C. § 6201(a).

taxes imposed by the internal revenue laws."[36]  Within sixty days of making an assessment, the IRS must notify the taxpayer of an assessment and must demand payment of the taxpayer.[37]  If the taxpayer neglects or refuses to pay the tax after assessment and notice and demand, the IRS may collect the tax by levy upon his/her property.[38]

Prior to collecting the assessment by levy, the IRS must notify the a taxpayer of his/her right to request a CDP Hearing before a levy is made.[39]  The notice must be given at least thirty days before the levy.[40]  If the taxpayer submits a request within this thirty-day period, the taxpayer is entitled to the CDP Hearing before the IRS Office of Appeals.[41]  Generally speaking, the levy that is the subject of the CDP Hearing is suspended while administrative and judicial proceedings are pending.[42]

After the CDP Hearing is held, the Appeals Officer must send the taxpayer a notice of determination setting forth findings and the decision.[43]  If the determination was made on or before October 16, 2006, depending on the type of tax at issue, the taxpayer is entitled to appeal the

---

[36]*Id.* § 6301.

[37]*Id.* § 6303(a).

[38]*Id.* § 6331(a).

[39]*Id.* § 6330(a)(1).

[40]*Id.* § 6330(a)(2).

[41]*Id.* § 6330(a)(3)(B), (b)(1).

[42]*Id.* § 6330(e)(1).

[43]26 C.F.R. § 301.6330-1(e)(3) (Q&A E8(I)).

determination to either the Tax Court or to the United States District Court.[44]  Determinations made

after October 16, 2006, are appealable *only* to the Tax Court.[45]

Here, the determination at issue was made on May 10, 2006.  The parties agree, that because

this case involves trust fund recovery penalties, the appeal belongs in the district court.

## V.    Standard of Review

Title 26 U.S.C. § 6330(d) provides for judicial review of the IRS' administrative

determinations. The statute is silent, however, with respect to the standard of review that the

reviewing court must apply.  The Tenth Circuit has not yet addressed the appropriate standard of

review under § 6330.  Other courts, however, have uniformly adopted the standard of review set

forth in the Conference Report accompanying the IRS Restructuring Act (H. R. Conf. Rep. No. 105-

599 (1998)).[46]  The Conference Report provides that in cases where the validity of the underlying

tax liability itself is properly at issue in the determination, the determination will be reviewed *de*

---

[44]*Peter D. Dahlin Attorney at Law, P.S. v. Comm'r*, T.C. Memo. 2007-310, 2007 WL 2962777, at *3 (U.S. Tax Ct. Oct. 11, 2007) (citing 26 U.S.C. § 6330(d)(1)); *Browder v. Ota*, No. L-06-336, 2007 WL 1213407, at *1 n.1 (D. Md. Jan. 11. 2007).

[45]*Dahlin* (citing Pension Protection Act of 2006, Pub. L. No. 109-280, § 855(a), 120 Stat. 780, 1019 (2006)); Browder, 2007 WL 1213407 at *1 n.1 (same).

[46]*See, e.g., Ulloa v. U.S.*, No.1:06-CV-445 (NAM/RFT), 2007 WL 2764791, at *3 (N.D. N.Y. Sept. 2007) (citing Conference Report); *Bartley v. Comm'r*, 343 F. Supp. 2d 649, 652 (N.D. Ohio 2004) (same); *Borges v. U.S.,* 317 F.Supp. 2d 1276, 1281-82 (D. N.M. 2004) (same); *Goza v. Comm'r*, 114 T.C. No. 12, 114 T.C. 176, 181-182, 2000 WL 283864, at *5 (Mar. 17, 2000) (citing Conference Report); (*Carroll v. U.S.,* 217 F. Supp. 2d 852, 856 (W.D. Tenn. 2002) ("District courts within the [Sixth] Circuit have adopted the abuse of discretion standard in IRS cases citing the legislative history of § 6330(d)."); *MRCA Info. Servs. v. U. S,* 145 F.Supp. 2d 194, 199 (D. Conn. 2000) (citing Conference Report); *Sego v. Comm'r*, 114 T.C. No. 37, 2000 WL 889754, at *5 (2000); *see also Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003) (without referencing conference report, holding that review of underlying tax liability is *de novo* and review of other administrative determinations is for abuse of discretion); *Cox v. U.S.,* 345 F. Supp. 2d 1218, 1220 (W. D. Okla. 2004) (holding that standard of review on  issues other than underlying tax liability is abuse of discretion, without reference to the conference report); *Leiter v. U.S.,* No. Civ. A. 03-2149-GTV, 2004 WL 303210, at *2 (D. Kan. Jan. 22, 2004) (same).

*novo*.[47]  Where the validity of the underlying tax liability is not at issue, the taxpayer may challenge the determination for abuse of discretion.[48]

Here, Plaintiff does not contest the existence or amount of the tax liability.  Rather, he objects to the IRS' attempts to collect the penalties, contending that the collection statute of limitations has run as to all four penalties.  Thus, the Court holds, and the parties agree, that the Court must review the Appeals Officer's decision for the abuse of discretion.

Under the abuse of discretion standard of review, a decision will not be disturbed unless the reviewing court "has a definite and firm conviction" that the decision-making agency made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[49]  The Tenth Circuit has held that an abuse of discretion occurs when the decision is "arbitrary, capricious or whimsical," or results in a "manifestly unreasonable judgment."[50]  When a court reviews an agency's decision under the arbitrary, capricious or abuse of discretion standard, its review is "narrow and deferential," and the court must uphold the agency's action "if it has articulated a rational basis for the decision and has considered relevant factors."[51]

---

[47]H.R. Conf. Rep. No. 105-599, at 266 (1998).

[48]*Id.*

[49]*McEwen v. City of Norman,Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991) (quoting *U.S. v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986))

[50]*U. S. v. Wright*, 826 F.2d 938, 943 (10th Cir.1987).

[51]*Copart, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 495 F.3d. 1197, 1202 (10th Cir. 2007); *Slingluff v. Occupational Safety & Health Review Comm'n,* 425 F.3d 861, 866 (10th Cir. 2005).

The court's review is limited to the information available to the IRS Appeals Officer when the decision was made.[52]  The burden is on the taxpayer, who is challenging the IRS' determination, to demonstrate that the IRS Appeals Officer abused his/her discretion.[53]  This is based on the well-settled principle that "[t]he party challenging an agency action bears the burden of proving that it was arbitrary and capricious."[54]

In applying this abuse of discretion standard, the court must keep in mind that statutes of limitations which bar the collection of taxes that are otherwise due and unpaid, as they are here, are strictly construed in favor of the United States.[55]  Indeed, the Supreme Court has held that if the IRS' construction of a statute of limitations is reasonable, the court must accept it "absent convincing grounds for rejecting it."[56]

---

[52]*Borges,* 317 F. Supp. 2d at 1282; *Sego v. Comm'r*, 114 T.C. 604, 610, 2000 WL 889754 (U.S. Tax Ct. June 30, 2000) (matters raised after the hearing do not reflect on whether the determinations are an abuse of discretion).

[53]*Richter v. U. S.*, No. 01CV5240, 2002 WL 31031777, *2 (C.D. Cal. Apr. 2, 2002) (citing *Redmond v. U. S.,* 507 F.2d 1007, 1011-12 (5th Cir. 1975) (holding that agency's action stands unless the plaintiff can prove it should be set aside); *Estate of Andrews v. Comm'r*, T.C. Memo. 2007-30, 2007 W.L. 415110, at *11 (U.S. Tax Ct. Feb. 7, 2007) ("Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect.").  *See also Welch v. Helvering*, 290 U.S. 111, 115 (1933) (The "ruling [of the Commissioner of Internal Revenue] has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong.")

[54]*AllCare Home Health, Inc. v. Shalala*, 278 F.3d 1087, 1089 (10th Cir. 2001) (citing *Angel v. Butz,* 487 F.2d 260, 263 (10th Cir. 1973)).

[55]*Bufferd v. Comm'r,* 506 U.S. 523, 527, n.6 (1993) (citations omitted) ; *U.S. v. Ryals*, 480 F.3d 1101, 1104 (11th Cir. 2007); *Richmond v. U.S.*, 172 F.3d 1099, 1101 (9th Cir. 1999).

[56]*Bufferd* at 527 n. 6 (citing *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984)).  *See also E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924) ("Statutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government."); *Lucia v. U.S.,* 474 F.2d 565, 570 (5th Cir. 1973) ("[A] period of limitations runs against the collection of taxes only because the Government, through Congressional action, has consented to such a defense.  Absent Government consent, no limitations defense exists.").

Accordingly, in this case, Plaintiff must carry a very heavy burden to overturn the Appeals Officer's decision. This Court is required to uphold the Appeals Officer's Determination unless it determines with a definite and firm conviction that the Appeals Officer committed a clear error of judgment, either as to the law or facts of this case, or that the Appeals Officer's determination was a manifestly unreasonable judgment that was arbitrary, capricious or whimsical. Furthermore, if the Court determines that the Appeals Officer's construction of a statute of limitations is reasonable, Plaintiff must provide convincing reasons for this Court to reject it.

**VI.    Issues**

The ultimate question to be resolved in this case is whether the IRS Appeals Officer abused her discretion in determining that at the time the IRS received Plaintiff's CDP Hearing Request on March 3, 2004, the collection statutes of limitation had not expired for each of the four trust fund recovery penalties assessed against Plaintiff. Resolution of this question turns on issues of statutory interpretation and the effect of certain amendments to the Internal Revenue Code on the suspension, if any, of the collection statute of limitations due to Plaintiff's bankruptcy proceedings and three OICs. The parties' dispute focuses on the complicated interplay among three statutes that Congress enacted in 1998, 2000, and 2002 regarding suspensions and extensions of the limitations period by virtue of OICs, and the interplay of those statutes with the statute providing for the suspension of the limitations period due to the filing of bankruptcy proceedings.

**VII.    Statutory Framework**

Before resolving these issues, the Court will explain the statutory framework, i.e., the collection statute of limitations and the various other statutes and their amendments, and how they relate to the suspension of the limitations period.

## A.    The Ten-Year Collections Statute of Limitations, I.R.C. § 6502

Pursuant to I.R.C. § 6502, the United States may collect a tax, by a levy or court proceeding, within ten years after the assessment.[57]   The limitations period, may be tolled or suspended, however, as a result of certain circumstances, including the submission of OICs and the filing of bankruptcy proceedings.

Prior to the enactment of the Internal Revenue Service Restructuring and Reform Act of 1998 ("1998 Reform Act"), which became effective in 2000 and which is discussed in detail below, I.R.C. § 6502(a) provided that the statute of limitations could be extended by agreement between the taxpayer and the IRS.[58]   The agreement would be set forth in the taxpayer's OIC that was presented on a Form 656 and would provide for a waiver of the statute of limitation, i.e., would provide that the statute of limitations on the assessment would be suspended during the period that the offer was pending and for one year thereafter.[59]   OICs presented on a Form 656 contained a waiver of the

---

[57]I.R.C. § 6502(a)(1), codified at 26 U.S.C. § 6502.

[58]*See, e.g., Foutz v.* U.S., 72 F.3d 802, 805 (10 th Cir. 1995) (taxpayer and IRS had agreement to increase the permissible period for levy or suit , which became the "substitute limitations period" authorized by § 6502)*; U.S. v. Cook,* No. Civ. A. 02-CV09475, 2004 WL 690804, at *10 (E.D. Pa. Mar. 22, 2004) ("[C]ollection period may only be extended by agreement of the parties pursuant to 26 U.S.C. 6502(a).");*U.S. v. Scharf,* No. 88-545 C(2), 1991 WL 828355, at *2 (E. D. Mo. Apr. 15, 1991) (suit must be commenced with collection period unless that period is extended by agreement of IRS and taxpayer) (citing 26 U.S. § 6502 (1986)).

[59]*See U.S. v. Ryals,* 480 F.3d 1101, 1103 (11th Cir. 2007) (pursuant to Form 656, taxpayer and IRS agreed to suspend the limitations period during the pendency of the OIC plus an additional year after the termination, withdrawal or rejection of the offer in compromise);*U.S. v. McGee*, 993 F.2d 184, 185 (9th Cir. 1993) (Form 656 provided for agreement to suspend the running of the limitations period on assessment and collection for the period during which the offer in compromise is pending and for one year thereafter).

limitations period in order to enable the IRS to consider the offer without the prejudice resulting from a running of the limitations period against collection of the tax.[60]

The parties in this case do not dispute that the first two of Plaintiff's OICs were made subject to the agreement that the collection statute would be suspended while the offer was pending, plus an additional year after the termination, withdrawal or rejection of the OIC.

### B. Suspension of the Collection Statute of Limitations Due to the Filing of Bankruptcy Proceedings, I.R.C. § 6503(b) and (h)

Because Plaintiff filed four bankruptcy petitions during the relevant time period, the bankruptcy suspension provision of the Code also come into play in this case. Section 6503(b) of the Code provides that "[t]he period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court . . . and for 6 months thereafter."[61] Similarly, § 6503(h) provides that the period of limitations provided in § 6501 or 6502 for making assessments or collection "shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting" and for six months thereafter.[62] In other words, the ten-year collection statute of limitations is suspended (i.e., tolled) for the period during which a taxpayer's bankruptcy case is pending and/or during the period during which the debtor's assets are in control or custody of the bankruptcy court, plus an additional six months.[63]

---

[60]See U.S. v. Ressler, 576 F.2d 650, 652 (5th Cir.1978) (citations omitted).

[61]Id. at (b).

[62]Id. at (h).

[63]U.S. v. Nicholson, No. Civ. A. 01-1214, 2002 WL 31780037, at *1 (E.D. La. Dec. 11, 2002)
(continued...)

16

**C.     The Internal Revenue Service Restructuring and Reform Act of 1998**

In 1998, Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 ("the 1998 Reform Act"), which took effect on January 1, 2000.[64]  Two sections of the 1998 Reform Act are particularly relevant to this appeal:  § 3461 and § 3462.

Section 3461 of the 1998 Reform Act amended I.R.C. § 6502 and was entitled "Procedures Relating to Extension of Statute of Limitations by Agreement."[65]  Section 3461 eliminated the ability of the taxpayer and the IRS to enter into an agreement to extend the collection statute of limitations in conjunction with an offer in compromise.[66]  Pursuant to § 3461(c)(1), the amendments made by § 3461 were to apply to any requests to extend the period of limitations that were made after December 31, 1999.[67]  Thus, *after December 31, 1999*, the taxpayer and IRS could not enter into any new agreements to extend the CSED such as those that were contained in the Form 656 and the first two of Plaintiff's OICs.

Section 3461(c)(2) of the 1998 Reform Act also contained a provision that applied to any "prior requests," i.e., requests to extend the period of limitations that were made *on or before December 31, 1999*.  Section 3461(c)(2), provided:

---

[63](...continued)
(citing I.R.C § 6503(h); *In re Pattalochi*, 269 B. R. 60, 62 (Bankr. D. Wyo. 2001) (citing IRC § 6503(h)); *In re Brustman*, 217 B.R. 828, 832, n.10 (Bankr. C.D. Cal. 1997) (citing I.R.C. § 6503(b)).

[64]*U.S. v. Ryals*, 480 F.3d. 1101, 1105 (11th Cir. 2007) (citing § 3461(c)(2), 112 Stat. 685, 764); *U.S. v. Greenfield*, No. 04-22991-CIV, 2006 WL 2472845, at *3 (S.D. Fla. July 7, 2006).

[65]Pub. Law. No. 105-206, 112 Stat. 685, 764.

[66]*Id.*

[67]*Id.* ("The amendments made by this section [i.e., § 3461] shall apply to requests to extend the period of limitations made after December 31, 1999."); *see also U.S. v. Ryals*, 480 F.3d. at 1105 (citing Pub. law. No. 105-206, § 3461(c)(2), 112 Stat. 685, 764)).

PRIOR REQUEST– If, in any request to extend the period of limitations made *on or before December 31, 1999*, a taxpayer agreed to extend such period beyond the 10-year period referred to in section 6502(a) of the Internal Revenue Code of 1986, such extension shall expire on the latest of –

(A) the last day of such 10-year period;

(B) December 31, 2002; or

(C) in the case of an extension in connection with an installment agreement,[68] the 90th day after the end of the period of such extension.[69]

This amendment contained in § 3461(c)(2) of the 1998 Reform Act is known as a "Sunset Provision,"[70] and, by its express terms, applied only to requests to extend the period of limitations that were *made on or before December 31, 1999.*[71] Thus, as to a request to extend the ten-year limitations period that was made on or before December 31, 1999 and which did not involve an installment agreement, the Sunset Provision of the 1998 Reform Act provided that the extension would expire on the last day of the ten-year collection period or on December 31, 2002, whichever was later.

Another section of the 1998 Reform Act that is relevant to this appeal is § 3462, which was entitled "Offers-in-Compromise."[72] Section 3462(b) of the Reform Act amended I.R.C. § 6331[73] to suspend the limitations period while an OIC was pending (and for an additional thirty days after the

---

[68]It is undisputed that Plaintiff did not enter into an installment agreement with the IRS. Thus, subsection (C) does not come into play in this case.

[69]Pub. Law No. 105-206, § 3461(c)(2), 112 Stat. 685, 764 (emphasis added).

[70]*See Ryals*, 480 F.3d at 1107 (referring to § 3461(c)(2) as a "sunset provision." The Court will hereinafter refer to this provision as the "Sunset Provision" of the 1998 Reform Act.

[71]*See* Pub. Law No. 105-206, § 3461(c)(2), 112 Stat. 685, 764.

[72]*Id.,* § 3462, 112 Stat. 685, 764-66.

[73]26 U.S.C. § 6331.  I.R.C. § 6331 is entitled "Levy and Distraint."

IRS rejected an OIC and during the pendency of any appeal filed after the rejection).[74]  More specifically, § 3462(b ) added § 6331(k)(1) to the I.R.C. Code and prohibited the IRS from making any levy during the time an OIC was pending and for thirty days after the rejection of the OIC, and during the period that any appeal was pending (assuming the taxpayer filed an appeal within thirty days of the rejection of the OIC).[75]  Section 3462(b) stated that for purposes of new § 6331(k)(1), an offer in compromise would be deemed to be pending "beginning on the date the Secretary accepts such offer for processing."[76]

In addition, § 3462(b) stated that for purposes of new § 6331(k)(3), a rule similar to I.R.C. § 6331(i)(5) would apply.[77]  I.R.C. § 6331(i)(5) — which was not changed by the 1998 Reform Act — provided that the period of limitations was suspended while the IRS was prohibited from making a levy.[78]  The Court will refer to this portion of the amendment as the "Suspension Provision" of the 1998 Reform Act.

Thus, under these 1998 Reform Act amendments, during the pendency of an OIC and thirty days after the rejection of the OIC (and any subsequent appeal period), the IRS was, pursuant to

---

[74]*Id*., § 3462(b), 112 Stat. 685, 765-66.

[75]*Id.* (citing §3462(b) of the Reform Act); *U.S. v. Greenfield*, No. 04-22991-CIV, 2006 WL 2472845, at *3 (S.D. Fla. July 7, 2006) (citing same).

[76]Pub. L. 105-206, § 3462(b), 112 Stat 685, 765.

[77]§ 3462(b) of the 1998 Reform Act stated as follows:  "(3) CERTAIN RULES TO APPLY. – Rules similar to the rules of paragraphs (3),(4), and (5) of subsection (i) shall apply for purposes of this subsection."  Pub. L. 105-206 112 Stat 685, 766.

[78]I.R.C. § 6331(i)(5) states as follows:  "The period of limitations under section 6502 shall be suspended for the period during which the Secretary is prohibited under this subsection from making a levy."

I.R.C. § 6331(k), prohibited from levying on the assessment and, pursuant to I.R.C. § 6331(i)(5) (i.e., the Suspension Provision) the statute of limitations was suspended during that period.

Section 3462(e) of the 1998 Reform Act set out the effective dates of the amendments contained within §3462.  Section 3462(e) stated as follows:

EFFECTIVE DATES. —

> (1)  IN GENERAL. — The amendments made by this section shall apply to proposed offers-in-compromise and installment agreements submitted after *the date of the enactment of this Act.*

> (2)  SUSPENSION OF COLLECTION BY LEVY. — The amendment made by subsection (b) shall apply to offers-in-compromise *pending on or made after December 31, 1999.*[79]

As noted above, the 1998 Reform Act was enacted, i.e., became effective, on January 1, 2000.

### D.     The Community Renewal Tax Relief Act of 2000

In 2000, Congress passed the Community Renewal Tax Relief Act of 2000 ("2000 Renewal Act").[80]  Effective December 21, 2000, the 2000 Renewal Act eliminated the provision allowing suspension of the limitations period during the pendency of an OIC.  More specifically, the 2000 Renewal Act amended I.R.C. § 6331(k)(3) to delete the reference to I.R.C. § 6331(i)(5).[81]  In other words, the 2000 Renewal Act deleted the Suspension Provision so that the limitations period was no longer suspended for the period during which the IRS was prohibited from making a levy (which

---

[79]Pub. L. 105-206, § 3462(e), 112 Stat 685, 766 (emphasis added).

[80]Pub. L. No. 106-554, App. G, § 313, 114 Stat. 2763.

[81]*See* Pub. L. No. 106-554, App. G, § 313(b)(3), 114 Stat. 2763A-642 ("Paragraph (3) of section 6331(k) is amended by striking '(3), (4), and (5),' and inserting '(3) and (4)'.").

had included the period during which an OIC was pending).  The 200 Renewal Act stated that this particular amendment took effect the date of enactment, i.e., December 21, 2000.[82]

### E.  The Job Creation and Worker Assistance Act of 2002

Finally, in 2002, Congress enacted the Job Creation and Worker Assistance Act of 2002 ("2002 Jobs Act").[83]  That act restored the reference to I.R.C. § 6331(i)(5), thereby reinstating the statutory suspension during the pendency of an OIC.  The Jobs Act states that this amendment was to take effect on the date of the enactment of the Jobs Act, i.e., March 9, 2002.[84]

## VIII.  Discussion and Application of the Statutes to this Case

### A.  Determination of the Initial CSED for Each Penalty

In this case, the IRS assessed a trust fund recovery penalty against Plaintiff on September 26, 1988 for the quarterly period ended December 31, 1986; on December 7, 1987 for the quarterly period ended March 31, 1987; on April 3, 1989 for the quarterly period ended June 30, 1988; and on February 4, 1991 for the quarterly period ended September 30, 1989.[85]  The parties agree that if the statute of limitations was not suspended on any of those four liabilities, the CSEDs, i.e., the date until which the IRS could collect the underlying tax liabilities, would have been September 26, 1998; December 7, 1997; April 3, 1999; and February 4, 2001, respectively.  Had there been no suspension of the CSEDs, it is clear that the statutes of limitations would have expired by March 3,

---

[82]*See id* (title page) listing enactment date as December 21, 2000).  *See also U.S. v. Greenfield,* No. 04-22991-CIV, 2006 WL 2472845, at *4, n.5 (S.D. Fla. July 7, 2006) (noting enactment date as December 21, 2000).

[83]Pub. L. No. 107-147, § 416(e)(1), 116 Stat. 21, 55 (2002)

[84]Id., § 416(e)(2).

[85]Notice of Determination at p.1; Attachment to Notice of Determination at p.1.

2004, the date the IRS received Plaintiff's CDP Hearing request, and the IRS would be prohibited from levying against Plaintiff to recover the penalties.

The parties do not dispute that some suspensions occurred; they disagree, however, as to how long the CSEDs were extended and under which statutes. The Court will therefore examine the parties' respective positions against the backdrop of the above-reviewed statutes. First, the Court will discuss how the Appeals Officer determined that the statutes of limitations had not expired and will set forth the United States' explanation of how and why she correctly applied each rule contained in the Determination to decide that the statutes of limitations had not expired. The Court will then address Plaintiff's position and his arguments as to why he asserts the Appeals Officer abused her discretion and why her decision should be overturned. The Court will then discuss the United States' response to Plaintiff's arguments and why it contends the Appeals Officer did not abuse her discretion. Finally, the Court will determine whether the Appeals Officer abused her discretion.

**B.    The Appeals Officer's Decision**

*1.    Application of the bankruptcy suspension statute*

The Appeals Officer first applied I.R.C. § 6503 to suspend the collection statute from the date each bankruptcy petition was filed to the date of discharge, plus an additional six months to determine the revised CSEDs. Thus, as of the date of discharge of Plaintiff's fourth bankruptcy, the Appeals Officer extended the CSED for Penalty #1 to October 17, 2002; Penalty #2 to December 28, 2001; Penalty #3 to April 25, 2003, and Penalty #4 to April 23, 2004. The Appeals Officer then used these revised CSEDs as the starting point for applying the Sunset Provision of the 1998 Reform Act.

*2.    Application of the 1998 Reform Act, 2000 Renewal Act and 2002 Jobs Act*

The Appeals Officer next applied the 1998 Reform Act, the 2000 Renewal Act, and the 2002 Jobs Act to determine the effect of Plaintiff's three OICS on the statute of limitations as applied to each of the four penalties.  The Appeals Officer applied the following rules, based on the interplay between the 1998 Reform Act, the 2000 Renewal Act, and the 2002 Jobs Act.[86]

**Rule (a):[87]**

If the OIC was pending and rejected prior to January 1, 2000, the CSED was extended from the pending date until the rejection date and for an additional year after the rejection date, all due to the agreement contained in Form 656.  This extension, however, *could not* extend the CSED beyond December 31, 2002 because of the Sunset Provision contained in § 3461(c)(2).  If the original CSED was beyond December 31, 2002 then it remained the CSED of record as it was the later of "(A) the last day of such 10-year period: [or] (B) December 31, 2002."[88]  This rule was applied only to OICs *pending prior to, and rejected prior to, January 1, 2000* because of the applicable date of the Sunset Provision (found in §3461(c)(2)) and the applicable date of the §3462 Suspension Provision (found in § 3462(e)(2)).

**Rule (b):**

If the OIC was pending prior to January 1, 2000 but was rejected on or after that date, the CSED was extended from the pending date until December 31, 1999 plus 1 year, according to the agreement to extend the limitations period contained in the Form 656.  The extension, which was

---

[86]These "rules" are based on the rules set forth on p. 5 of the Appeals Officer's May 10, 2006 Determination.  *See* Part III, *supra,* Fact No. 16.  The Court has expanded these rules based on the United States's briefing and the calculations attached to the May 10, 2006 Determination.

[87]The Court will refer to the "Rules" applied by the Appeals Officer using the same letters used by the Appeals Officer, i.e., Rule (a), Rule (b), Rule (c), and Rule (d).

[88]*See* Pub. Law. No. 105-206, § 3461(c)(2)(A), 112 675, 764.

*based upon the agreement* contained in the Form 656 (i.e. the period from the pending date until December 31, 1999), however, could not extend the CSED beyond December 31, 2002 because of the Sunset Provision.

Although the *Sunset Provision* serves to cut off the extension *due to the parties' agreement* so as to extend the statute of limitations contained in the Form 656, the *Suspension Provision* provides for extension *by statute*.  Pursuant to  § 3462(e)(2) of the 1998 Reform Act, the Suspension Provision applies to offers in compromise that were pending on, or made after, December 31, 1999. Thus, the CSED was extended by the Suspension Provision contained in § 3462(b) beginning on January 1, 2000 and continuing until December 20, 2000 or until the rejection date, whichever was earlier.  December 20, 2000 stops the statute-based extension because the 2000 Renewal Act took effect on December 12, 2000 and eliminated the Suspension Provision by removing the reference to I.R.C. § 6331(i)(5).  In addition, the CSED was extended again from March 9, 2002 until the rejection date plus thirty calendar days.  This is because the 2002 Jobs Act reinstated the Suspension Provision by reinstating the reference to I.R.C. § 6331(i)(5).  In this way, it is possible for the statutory extension periods running from January 1, 2000 to December 20, 2000 and from March 9, 2002 to the rejection date (plus thirty days) to result in an extension of the CSED beyond the December 31, 2002 and the original CSED.

**Rule (c):**

The date the offer is pending was the date the waiver (contained in the Form 656), not the date the letter was mailed to the taxpayer advising that the offer is processable.  Plaintiff does not dispute the propriety of this rule.

**Rule (d):**

If the offer had a pending date of January 1, 2000 or later, and the taxpayer did not appeal, the CSED was extended from the pending date until thirty days after the rejection letter was issued; however, any portion of the period between December 20, 2000 and March 9, 2002 was excluded. The CSED was extended as a result of the Suspension Provision, which went into effect on December 20, 2000; however, the period between December 20, 2000 and March 9, 2002 was excluded because the Renewal Act eliminated the Suspension Provision. The Suspension Provision was reinstated effective March 9, 2000.

### C.   Analysis of the Parties' Arguments

#### 1.   *Application of the bankruptcy suspension statute*

As noted above, the Appeals Officer used the CSEDs as revised by the bankruptcy suspension statute, I.R.C. § 6503, as the starting point for her calculations under the 1998 Reform Act. Plaintiff basically agrees that application of § 6503 would have suspended the limitations periods for each penalty and extended the CSED for Penalty #1 to October 17, 2002; Penalty #2 to December 28, 2001; Penalty #3 to April 25, 2003, and Penalty # 4 to April 23, 2004.[89] Plaintiff argues, however, that  the Appeals Officer should not have applied § 6503 in the first place. He maintains that because the Sunset Provision refers only to the 10-year collection period of § 6502(a) and not to any § 6503 tolling or suspension, Congress must have intended that the Suspension Provision nullify the effect of § 6503's suspension provision. In support of his position, Plaintiff relies on the following references to the "10-year period" in § 3461(c)(2) of the 1998 Reform Act:

---

[89] *See* Pl.'s Sugg. in Support of Pl.'s Mot. for Summ. J (doc. 14) at pp. 3-5. Although Plaintiff contends that the revised CSEDs would have been a few days later,  those minimal differences are not material. Plaintiff maintains that the revised CSED for Penalty #1 would have been October 19, 2002 instead of October 17, 2002; for Penalty # 2 December 29, 2001 instead of December 28, 2001; for Penalty #3 April 26, 2003 instead of April 25, 2003; and for Penalty #4 April 24, 2004 instead of April 24, 2004. Pl.'s Sugg. in Supp. of Mot. for Summ. J. (doc. 14) at p.3-5.

PRIOR REQUEST– If, in any request to extend the period of limitations made on or before December 31, 1999, a taxpayer agreed to extend such limitations period beyond the *10-year period referred to in section 6502(a)* of the Internal Revenue Code of 1986, such extension shall expire on the latest of –

(A) the last day of *such 10-year period*;

(B) December 31, 2002; or

(C) in the case of an extension in connection with an installment agreement,[90] the 90th day after the end of the period of such extension.[91]

Plaintiff argues that because the Sunset Provision contains no reference to § 6503 suspension or tolling, the Appeals Officer abused her discretion in applying § 6503 and calculating revised CSEDs based on the bankruptcy suspensions in applying the Sunset Provision.

The United States counters that suspending the statute of limitations due to bankruptcy is *required* by I.R.C. § 6503 and that § 6503 has not been altered by any amendment, including the amendments contained in the 1998 Reform Act, the 2000 Renewal Act, and the 2002 Jobs Act.   In other words, because § 6503 has remained in effect at all times relevant to this case, the Appeals Officer was *required* to take into account suspension of the limitations periods pursuant to § 6503. The United States thus contends that the Appeals Officer did not err in extending the limitations periods due to Plaintiff's bankruptcies prior to applying the 1998 Reform Act.

The Court agrees with the United States.  Suspension of the limitations period is mandatory under the plain language of I.R.C. § 6503.  Section 6503(b) states that "[t]he period of limitations on collection after assessment prescribed in section 6502 *shall be suspended* for the period the assets

---

[90]It is undisputed that Plaintiff did not enter into an installment agreement with the IRS. Thus, this subsection does not come into play in this case.

[91]Pub. Law No. 105-206, § 3461(c)(2), 112 Stat. 685 (emphasis added).

of the taxpayer are in the control or custody of the court . . . ."[92]  Similarly, § 6503(h) states that "[t]he running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection *shall*, in a case under title 11 of the United States Code, *be suspended* . . . ."

Furthermore, both §§ 6503(b) and (h) refer back to § 6502.  Thus, it is fair to say that once the collection period is extended under § 6503(b) or § 6503(h), it becomes the new collection period under § 6502.  Thus, the Court concludes it was reasonable for the Appeals Officer to apply § 6503 to extend the collections periods and to use the extended CSEDs in applying the 1998 Reform Act to Plaintiff's penalties.

In light of the foregoing, the Court concludes that the Appeals Officer did not abuse her discretion in applying the bankruptcy suspension provisions of § 6503 to extend the limitations periods prior to applying the Sunset Provision of the 1998 Reform Act to Plaintiff's penalties.

     2.     *Application of the 1998 Reform Act, 2000 Renewal Act, and 2002 Jobs Act*

     a.     *Application to Plaintiff's first OIC*

Plaintiff does not argue with the Appeals Officer's application of Rule (a) to Plaintiff's first OIC.  That OIC was first pending on September 4, 1996 and rejected on December 12, 1997.  As the first OIC was a "request to extend the period of limitations made on or before December 31, 1999" within the meaning of §3461(c)(2), the Appeals Officer applied the Sunset Provision of the 1998 Reform Act to it.  The Sunset Provision cut off the parties' agreement to extend the limitations period at the December 31, 2002 date set forth in the Sunset Provision.  Thus, the parties agree that the revised CSED with respect to Plaintiff's first OIC was December 31, 2002.

     b.     *Application to Plaintiff's second OIC*

---

[92]I.R.C. § 6503(b) (emphasis added).

Plaintiff contends that the Appeals Officer erred in applying Rule (b) to Plaintiff's Second OIC.  The second OIC was first pending on November 12, 1999 and was rejected on June 1, 2001. The Appeals Officer applied Rule (b) to that OIC as follows:  First, because the offer was pending prior to  December 1, 2001, the Sunset Provision applied to cut off *the parties' agreement* to extend the CSED as of December 31, 2002.  Second, the Appeals Officer applied the Suspension Provision of the 1998 Reform Act to *statutorily* suspend the collection during the pendency of the OIC.  The Suspension Provision was applied because this OIC was pending on December 31, 1999, and, pursuant to § 3462(e)(2), the Suspension Provision applies "to offers-in-compromise pending on or made after December 31, 1999."[93]  Thus, the Appeals Officer applied the Suspension Provision to suspend the collection statute of limitations beginning January 1, 2000, which was the effective date of the 1998 Reform Act.  The statute of limitations continued to be suspended but only until December 20, 2000 because, effective December 21, 2000, the 2000 Renewal Act did away with the statutory suspension.  The Renewal Act stayed in effect through the remainder of the time the second OIC was pending.  Thus, there was no further statutory suspension with respect to the second OIC past December 20, 2000.

Plaintiff contends that the Appeals Officer erred in applying Rule (b) to his second OIC and that the Appeals Officer should have applied Rule (a) instead.  In other words, Plaintiff maintains that only the Sunset Provision and not the Suspension Provision should have been applied.  Plaintiff argues that the December 31, 2002 cut off contained in the Sunset Provision should have been applied to his second OIC because it was a request to extend the period of limitations made on or before December 31, 1999 under § 3461(c)(2).  Plaintiff maintains that the Suspension Provision of § 3462 does not apply to an OIC made prior to that date because the effective date of the 1998

---

[93]Pub. L. 105-206, § 3462(b), 112 Stat 685, 766.

Reform Act was not until January 1, 2000.  Had the Appeals Officer applied only the Sunset Provision with respect to his second OIC, ,then the revised CSED would have remained December 31, 2002, which Plaintiff contends is the correct CSED.

The United States disagrees.  According to the United States, Plaintiff's argument is flawed because Plaintiff ignores two critical differences between § 3461 and § 3462.  First, § 3461 applies only to *agreements to extend* the collections statute of limitations, while § 3462 reaches only to *statutory extensions*.  Second, different dates apply to § 3461 and § 3462.  The Sunset Provision contained in § 3461 applies to agreements to extend the collections statute that were *made on or before December 31, 1999.*[94]  In contrast, § 3462 and its Suspension Provision apply to offers in compromise that are *pending on or made after December 31, 1999.*  The United States maintains that the Appeals Officer understood these distinctions and correctly applied both sections of the 1998 Reform Act to calculate the revised CSED with respect to Plaintiff's second OIC

The Court agrees with the United States and holds that the Appeals Officer reasonably construed the 1998 Reform Act and applied it in this case.  As the United States correctly points out, Plaintiff's interpretation of §§ 3461 and 3462 is contrary to the express language of the 1998 Reform Act.  It is well settled that when interpreting any statute, the court must begin with the plain and ordinary meaning of the language employed in the text of the statute.[95]  Any interpretation that is contrary to the plain meaning of the statute must be rejected.

Plaintiff  fails to recognize that §§ 3461 and 3462 are two separate and distinct statutory amendments addressing two different issues.  Section 3461 amended I.R.C. § 6502 and was entitled "Procedures Relating to Extension of Statute of Limitations by Agreement."  It applies only to

---

[94]*See* Pub. L. 105-206, § 3461(c)(2), 112 Stat 685, 764.

[95]*Burlington North & Santa Fe Ry. v. Grant,* 505 F.3d 1013, 1024 (10th Cir. 2007).

*agreements to extend* the statute of limitations, such as those contained in Plaintiff's first two OICs. Section 3462, on the other hand, amended I.R.C. § 26 U.S.C. § 6331 and was entitled "Offers-in-Compromise." It provides for a *statutory extension of the limitations period* while an offer in compromise is pending. It added a new section, § 6331(k)(1), which prohibited the IRS from making any levy during the time an OIC is pending and for thirty days after it is rejected and during any period of appeal. It also incorporated § 6331(i)(5), such that the period of limitations is suspended while the Secretary is prohibited from making a levy. In short, § 3462 acts to suspend the limitations period while the OIC is pending. This is quite different than cutting off an agreed upon extension of the limitations period. Thus, the two amendments relate to totally different situations.

Secondly, the two amendments relate to two different time periods. The Sunset Provision contained in § 3461 applies to "any request to extend the period of limitations made on or before December 31, 1999"[96] and provides that any such agreement to extend the limitations period beyond the ten-year period of § 6502(a) expires on the last day of the ten-year period or on December 31, 2002, whichever is later.[97] The Suspension Provision contained in § 3462(b), however, by the express terms of § 3462(e)(2) applies "to offers-in-compromise pending on or made after December 31, 1999."[98]

In light of the above, the Court holds that the Appeals Officer's construction of §§ 3461 and 3461 of the 1998 Reform Act was reasonable. Furthermore, the Court finds that the Appeals Officer correctly applied those sections to Plaintiff's second OIC, except in one small respect. As the

---

[96]Pub. Law. No. 105-206, § 3461(c)(2), 112 Stat. 685, 764.

[97]*Id.*, § 3461(c)(1), 112 Stat. 685, 764.

[98]*Id.*,§ 3462(b) & (e)(2), 112 Stat. 685, 766.

United States recognizes in its briefing, the Appeals Officer did make a minor error when she added a period of thirty days to the end of the suspension period running from January 1, 2000 to December 20, 2000.[99]  The Court agrees that the thirty days should not have been added after the December 20, 2000 date, as that was the date the 2000 Renewal Act eliminated the Suspension Provision.  That error, however, does not affect the Appeals Officer's ultimate conclusion that none of the statutes of limitations had expired by the time the IRS received Plaintiff's CDP Hearing Request on March 3, 2004.[100]

### c.      Application to Plaintiff's third OIC

Plaintiff next argues that the Appeals Officer incorrectly interpreted the 2000 Renewal Act and 2002 Jobs Act and therefore incorrectly applied Rule (d) to Plaintiff's third OIC.   As noted above, Plaintiff's third OIC was pending from December 11, 2001 until September 6, 2001.  Plaintiff contends that because his third OIC was submitted after the December 21, 2000 effective date of the 2000 Renewal Act, that act (with its elimination of the Suspension Period) applied, and it dictated that there could be no suspension of the collections period.   Plaintiff further argues that although his third OIC was still pending when the Jobs Act took effect on March 9, 2002, the Jobs Act's reinstatement of the Suspension Provision did not apply because the Jobs Act should be applied only prospectively.  In other words, Plaintiff contends that the Jobs Act's reinstatement of the Suspension Provision should only be applied to offers in compromise that were *first pending on or after March 9, 2002*, the date the Jobs Act became effective.  Thus, according to Plaintiff, because his third OIC

---

[99]*See* U.S. Mem. in Supp. of U.S. Mot. for Summ. J. (doc. 16) at p.9.

[100]Eliminating the erroneous thirty-day add-on, the earliest CSED would have expired on June 19, 2004 instead of July 19, 2004.  Consequently, the Appeals Officer's ultimate determination that the statute of limitations would not have been expired by March 3, 2004 was still correct.

was *pending prior to March 9, 2002* (it was first pending on December 11, 2001), the Jobs Act should not have been applied and the revised CSED should have remained December 31, 2002. As the CSED remained December 31, 2002, the statute of limitations had expired prior to the IRS receiving Plaintiff's CDP Hearing Request on March 3, 2004.

Plaintiff argues in the alternative that even if it is proper to apply the Jobs Act to his third OIC, the Act should apply only from March 9, 2002, when the Jobs Act first went into effect, until September 6, 2002, when his third OIC was returned. Thus, in the alternative, Plaintiff argues that the CSED would be extended only for the 181-day period from March 9, 2002 to September 6, 2002. Adding 181 days to the December 31, 2002 CSED would move the CSED only to July 1, 2003. Consequently, even under Plaintiff's alternative theory, the statutes of limitations would have run prior to March 3, 2004.

The United States argues that Plaintiff misconstrues both the 2000 Renewal Act and the 2002 Jobs Act. The Court agrees, and concludes that the plain meaning of those statutes supports the Appeals Officer's calculations and conclusions. As discussed in detail above, § 3462(e)(2) of the 1998 Reform Act expressly states that the amendments made in subsection (b) — which would include the Suspension Provision — apply to OICs "pending on or made after December 31, 1999."[101] Plaintiff's third OIC was first pending on December 11, 2001. Thus, it was a request to extend the statute of limitations "made after December 31, 1999." Neither the 2000 Renewal Act nor the 2002 Jobs Act amended that provision of the 1998 Reform Act. The 2000 Renewal Act merely eliminated the Suspension Provision effective December 21, 2000, and the 2002 Jobs Act merely reinstated the Suspension Provision effective March 9, 2002. Plaintiff's interpretation that the 2002 Jobs Act should only be applied to OICs made after March 9, 2002 is inconsistent with the plain language of

---

[101]Pub. Law. No. 105-206, § 3461(c)(2), 112 Stat. 685, 764.

the 2002 Jobs Act.  For similar reasons, Plaintiff's alternative interpretation is also inconsistent with the plain language of the 2002 Jobs Act.

In light of the foregoing, the Court holds that the Appeals Officer appropriately determined that the third OIC resulted in a statutory suspension starting March 9, 2002, when the Jobs Act went into effect, and through April 12, 2002, when the OIC was returned to Plaintiff.[102]  There was no statutory suspension between December 11, 2001 through March 8, 2002 because the Renewal Act eliminated the suspension from December 21, 200 through March 8, 2002.

## IX.    Conclusion — The Appeals Officer Did Not Abuse Her Discretion

As set forth in detail above, the Court finds that the Appeals Officer's construction of the bankruptcy suspension statute (I.R.C.§ 6503), the 1998 Reform Act, 2000 Renewal Act, and 2002 Jobs Act was consistent with their plain language and meaning.  Furthermore, the Court finds that the Appeals Officer applied the statutory framework in a reasonable and appropriate manner.  Plaintiff has failed to persuade the Court that the Appeals Officer exceeded the bounds of permissible

---

[102]The Court notes that this interpretation of the statutes is consistent with the Eleventh Circuit's application of the statutes to an offer in compromise pending from June 14, 2002 to April 12, 2002. *See U.S. v. Ryals*, 480 F.3d 1101 (3d Cir. 2007).  In analyzing that offer in compromise the *Ryals* Court held:

> Later statutory enactments also apply to the determination of how this second offer in compromise served to extend the statute of limitations. These are The Community Renewal Tax Relief Act of 2000 ("Renewal Act"), Pub.L. No. 106-554, 114 Stat. 2763 (2000); and the Job Creation and Worker Assistance Act of 2002 ("Worker Assistance Act"), Pub.L. No. 107-147, § 416(e)(1), 116 Stat. 21, 55 (2002). Effective December 21, 2000, the Renewal Act eliminated the statutory suspension of the limitations period.  Therefore, the second offer suspended the limitations period only from June 14, 2000 through December 20, 2000, the effective date of the Renewal Act.  The Worker Assistance Act, effective on March 9, 2002, reinstated the statutory suspension, thereby suspending the limitations period until March 12, 2002, the date the IRS rejected the second offer.

*Id.* at 1106-07.

choice or committed  any clear errors of judgment in determining that the statutes of limitations had not expired at the time the IRS received Plaintiff's CDP Hearing Request on March 3, 2004.  The Court does not find that Appeals Officer's determination was manifestly unreasonable or arbitrary, capricious or whimsical.  In sum, Plaintiff has failed to meet his burden to show under the abuse of discretion standard that the Appeals Officer's determination that the statutes of limitations had not expired should be set aside.  Accordingly, the Court the must affirm the IRS Appeals Officer's May 10, 2006 Determination and enter judgment in favor of the United States and against Plaintiff.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (doc. 13) and Defendant's Motion for Summary Judgment (doc. 16) are denied in that summary judgment is not the appropriate procedure by which the Court may decide an action for review of an Internal Revenue Service Appeals Officer's determination.

**IT IS FURTHER ORDERED** that the Internal Revenue Service Appeals Officer's May 10, 2006 Determination that the collection statutes for the trust fund recovery penalties for the periods ending December 31, 1986; March 31, 1987; June 30, 1988; and September 30, 1989 had not expired as of March 3, 2004, is **AFFIRMED.**

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 4th day of March 2008.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and *pro se* parties

34